IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIRCESTEEM, INC., | ) | |
|     Plaintiff, | ) | CASE NO.: 1:09-cv-3763 |
| | ) | |
| vs. | ) | JUDGE: Hon. Charles P. Kocoras |
| | ) | |
| PAUL MILLER and PRO CLOWN | ) | MAGISTRATE JUDGE: |
| PRODUCTIONS, INC., | ) | Hon. Geraldine Soat Brown |
|     Defendants. | ) | |

**CORRECTED**
**CIRCESTEEM'S MOTION FOR ORDER TO SHOW CAUSE**
**WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**
**OF THIS COURT'S TEMPORARY RESTRAINING ORDER**

Plaintiff CircEsteem, Inc., ("CircEsteem") by its attorney, moves this Honorable Court for an Order directing defendants Paul Miller and ProClown Productions, Inc. (collectively "Miller") to show cause why they should not be held in contempt of Court for intentionally violating the Temporary Restraining Order issued on June 23, 2009 ("TRO"). Specifically, Miller (a) has destroyed or attempted to destroy evidence by deleting CircEsteem files from the corporation's laptop computer while in his possession and by attempting to cancel cyberpirated domain name registrations that he was ordered to transfer back to CircEsteem; (b) has failed to transfer other CircEsteem assets in defiance of the TRO; and (c) has willfully and deliberately filed, after the entry of the TRO, at least two false and fraudulent trademark applications in Miller's own name for marks owned by CircEsteem and for at least one of those applications, submitted infringing documentation as a purported specimen of use. In support of this motion, CircEsteem states as follows:

I.  **Entry of the Temporary Restraining Order**

1. On Tuesday, June 23, 2009, CircEsteem, a not-for-profit children's youth outreach and circus program, filed a Complaint and Motion for Temporary Restraining Order seeking an immediate halt to irreparably harmful and unlawful action by its former employee and founder, defendant Paul Miller and by Miller's wholly owned for-profit corporation, ProClown Productions, Inc. Miller was terminated from his at-will employment as "Chief Goof Officer" of CircEsteem on June 22, 2009. (Ettelson Declaration attached hereto and incorporated herein as Exhibit A ("Ett. Decl.") at ¶ 2.)

2. In the weeks and months immediately prior to his termination, Miller embarked on a surreptitious and illicit scheme to register and/or transfer ownership of CircEsteem telephone numbers, domain names and web sites while at the same time unlawfully soliciting CircEsteem employees and converting CircEsteem assets and corporate opportunities for his own personal benefit. Following his termination, Miller (and others acting in concert with him) unlawfully hijacked and removed the CircEsteem websites from the World Wide Web, shut down the entire CircEsteem e-mail system and diverted telephone calls based upon his infringing, deceptive and unlawful transfer and use of CircEsteem's corporate and intellectual property. Miller's conduct not only jeopardized the safety of the children enrolled in CircEsteem programs but also threatened the very existence of an already economically fragile not-for-profit organization whose mission is to unite diverse groups of children in the performance of the circus arts. (*See* Motion for Temporary Restraining Order and supporting Memorandum of Law.)

3. Following a hearing, the Emergency Judge Samuel Der-Yeghiayan concluded that CircEsteem had "shown a substantial likelihood of success on the merits of its claims" and fulfilled all the associated criteria required for the entry of a Temporary Restraining Order.

The Court thereafter entered an Order directing Miller, among other things, "to return, assign and otherwise transfer registration for and ownership of any and all of CircEsteem's assets in their possession, including without limitation, CircEsteem's intellectual property" which included, but was not limited to, CircEsteem's Internet domain names. A copy of the Temporary Restraining Order is attached hereto and incorporated herein as Exhibit B.

## II. Destruction and Attempted Destruction of CircEsteem Documents and Evidence In This Case

4. In the almost two weeks since the Order was entered, CircEsteem has unsuccessfully attempted to work with Miller's counsel in an effort to obtain full compliance with the terms of the Order. (Ett. Decl. at ¶ 4.) Not only has Miller refused to comply with the Order, he has deliberately and willfully taken steps to destroy CircEsteem assets and evidence of his wrongdoing in defiance of the Order.

5. Specifically, Miller was issued a laptop computer belonging to CircEsteem for use during the course of his employment. On Monday, June 22, 2009, when he was informed of his termination, he was instructed to return all CircEsteem property in his possession, including but not limited to, the laptop, which he had not brought to the meeting. (Ett. Decl. at ¶ 5.) Twice during the termination meeting, Miller was warned that the laptop was CircEsteem's property and that he was not to use or delete any files. In response to his statement that he had personal photos and iTunes files on the laptop, Miller was told that he could copy those materials but should not delete them. Miller was told to return the laptop within 24 hours. (*Id.*) Miller, however, returned to his home in Kentucky with the computer.

6. The following day, after entry of the Temporary Restraining Order, Miller's counsel informed CircEsteem that "Paul is diligently working to get his personal items

(picture/iTunes) removed from the laptop, which is physically located with him in Kentucky."

(Ett. Decl. at ¶ 6 and Ex. 1.)

      7.     In response, counsel for CircEsteem stated:

> You and Paul were both at the meeting at 9:00 a.m. on Monday where the parties agreed that the laptop, which is CircEsteem's property, would be returned within 24 hours. Paul was also warned not to use or delete anything from the laptop. While we don't have any objection to his copying pictures or iTunes files, no files should be removed. Copying these files is a simple process that does not require days of time or diligent effort. Moreover, there was absolutely no reason for Paul to return to Kentucky with CircEsteem's property.

(Ett. Decl. at ¶ 6 and Ex. 1.)

      8.     Miller's counsel thereafter stated his belief that CircEsteem had not protested Miller's removal of his personal files from the laptop at the termination meeting. CircEsteem's counsel, however, immediately responded that CircEsteem had not protested Miller's

> *copying* of personal files. He was expressly warned by Rick George, however, that he was not to use or remove anything from the laptop. Also, given the fact that you were told that CircEsteem was filing legal action, you had and still have an obligation not to delete anything. .. [I]t would help facilitate our discussions if you can confirm that Paul is returning the laptop today and that nothing has been deleted. If he has already removed files, they should be copied to a disk and returned with the laptop with confirmation that the hard drive and the disk together represent all files that were on the laptop as of 9:00 a.m. Monday morning.

(Ett. Decl. at ¶ 6 and Ex. 1.)

      10.    Miller's counsel then stated that he was "entitled to remove personal photographs from the laptop" and that Miller was sending the laptop back via overnight mail. (Ett. Decl. at ¶ 6 and Ex. 1.)

      11.    After CircEsteem received the laptop, it was sent to a computer forensic expert to copy and analyze the contents and determine if any files had been deleted. (Ett. Decl. at ¶ 7.)

      12.    In the meantime, counsel for CircEsteem continued her efforts to identify any files Miller had removed from the laptop. On Tuesday, June 30, 2009, Miller's lawyer

confirmed that "Paul removed personal photos, his personal iTunes account, and personal data (i.e., a notes document with the social security numbers of his children, and personal bank account information)." (Ett. Decl. at ¶ 8 and Ex. 2.)

13. A full forensic analysis of a laptop computer is a process that can take up to 100 hours. (Ett. Decl. at ¶ 9.) While that analysis has not yet been completed in this case, CircEsteem has been informed that numerous files were removed from the laptop following the termination of Miller's employment and the entry of the Temporary Restraining Order. (*Id.*) These files are not limited to personal photos and iTunes account or even personal data. A preliminary expert analysis has indicated that critical corporate files and documents were removed. Directories or groups of files labeled "CircEsteem Key Documents" and "Contracts" were deleted. Within these directories were dozens of CircEsteem files on performances, proposals, grants, finances and donors. (*Id.*)

14. More specifically, documents created by Miller and others during the May-June 2009 period (during which he surreptitiously and illicitly schemed to unlawfully solicit CircEsteem employees and convert CircEsteem assets and corporate opportunities for his own personal benefit) were deleted. (*Id.*) A directory labeled "Trademark" was removed. A document entitled, "Registered Domain Names," was deleted. (*Id.*) In addition, on June 9, 2009, the same day that Miller unlawfully transferred CircEsteem's corporate telephone number to his own account, he downloaded all of CircEsteem's donor contact information from a database called Kintera. The resulting file, "Kintera Contacts Download 6_09_09" was, not surprisingly, also deleted. (*Id.*)

15. It is still early in the forensic investigation, and no final conclusion has yet been reached on the full extent of Miller's contemptuous deletions or on how many of the deleted files may be recoverable. CircEsteem's expert will issue a full report upon the completion of his

analysis. (*Id.*) CircEsteem has filed this motion, however, because we do know, at this point, that Miller deleted far more than personal photos and iTunes files and may have permanently destroyed evidence critical to the case. At the very least, this action requires expedited discovery and hearing on sanctions for contempt.

16. As set forth more fully in CircEsteem's Motion for Authorization to Issue GoDaddy.com Subpoena filed contemporaneously herewith, CircEsteem has also learned that Miller or others acting in concert with him have also attempted to destroy evidence of his cyberpiracy by cancelling domain names that the Court ordered Miller to return to CircEsteem.

17. Miller must be held accountable for these willful and defiant acts in direct violation of the Court's Order.

### III.   Failure To Transfer CircEsteem Assets In Defiance Of The TRO

18. In addition to the destruction and attempted destruction of evidence, Miller has continued to willfully defy the terms of the TRO.

19. The day after the Order was entered, counsel for the parties met to discuss the issues in the case and ways to potentially resolve it. During that meeting, counsel discussed the transfer of the domain names Circustots.com and its variants Circustots.org, Circustot.com and Circustot.org (the "Circustots Domain Names") and ChiefGoofOfficer.com and its variants ChiefGoof-Officer.com and ChiefGoofOfficer.org (the "ChiefGoofOfficer Domain Names").

20. CircEsteem maintains that the Circustots Domain Names and ChiefGoofOfficer Domain Names are assets of CircEsteem subject to the terms of the TRO and must be transferred back to CircEsteem. In support of its position, CircEsteem explained that these terms were created during and as part of Miller's employment with CircEsteem and therefore belong to the corporation. (Ett. Decl. at ¶ 10.) "Chief Goof Officer" is not a personal title; it is a corporate

position which has been held by Miller since it was created for CircEsteem. (*Id.*) It has not, to our knowledge, been used by anyone independently of CircEsteem. (*Id.*)

21.  Similarly, Circustots is a CircEsteem program for young children. CircEsteem provided Miller's counsel with a copy of an e-mail signed by Miller himself, as Founder and "Chief Goof Officer of CircEsteem" dated February 9, 2009.[1] (Ett. Decl. at ¶ 11 and Ex. 3.) The email states, ***"CircEsteem is expanding and I'd like some input on our latest offerings. … We are launching a CircusTots Program for 2-5 year olds in March and also are doing Esteem Team, day-long corporate training/teambuilding which culminate[s] in a show."*** (*Id.* Emphasis added.) CircEsteem also informed Miller's counsel that CircEsteem was hired and paid by Tamarack Camp in January/February of 2009 to present one of CircEsteem's CircusTots programs and promised to provide confirming documentation. (*Id.*)

22.  In the face of this evidence, Miller's counsel nevertheless remained "unconvinced" that these names were CircEsteem assets subject to the Order and refused to assist in their transfer. Miller has, however, provided no evidence to support his position of ownership. (Ett. Decl. at ¶ 12 and Ex. 4.)

23.  In the absence of any evidence of ownership by Miller, the record supports a finding that the ChiefGoofOfficer Domain Names and the Circustots Domain Names are CircEsteem assets subject to the terms of the TRO and must be immediately transferred to CircEsteem.

---

[1] The recipient of this e-mail has been redacted for privacy reasons. Once we have agreed on a Protective Order, CircEsteem will, however, release a complete copy of the document along with numerous others like it sent by your client to CircEsteem supporters.

**IV.     Filing Falsified Trademark Applications Using Infringing Documentation In Violation Of The TRO**

24.     In what can only be characterized as the most boldly reprehensible defiance of the TRO to date, CircEsteem has learned that on June 24th, the day after the TRO was entered and then again on June 30th, Miller willfully and deliberately filed at least two false and fraudulent trademark applications in his own name and that of Pro Clown for marks owned by CircEsteem. (Ett. Decl. at ¶ 20, 21  and Ex. 5-11.)  Even worse, for at least one of those applications, Miller submitted infringing documentation as a purported specimen of use.  (*Id.*)

25.     As the attached Declaration and Exhibits demonstrate, on June 24, 2009, the day after the TRO was entered, and at approximately the same time that Miller was transferring the ChiefGoofOfficer Domain Names and the Circustot Domain Names out of the GoDaddy account containing other cyberpirated CircEsteem domain names, Miller also filed an Application with the U.S. Patent and Trademark Office to obtain a service mark in CHIEF GOOF OFFICER for "children's education and entertainment, namely, live clown shows."  (Ett. Decl. at ¶ 20 and Ex. 11.)  Miller listed ProClown Productions as the alleged owner of the mark.  (*Id.*)  And as one of the supporting specimens, Miller attached an infringing brochure which he claimed is "currently used in commerce."  (*Id.*)  Miller had, however, surreptitiously and illicitly created the brochure by directing CircEsteem's printer to change and insert Miller's personal information into CircEsteem's corporate brochure.  (Ett. Decl. at ¶ 13-20 and Ex. 5-10.)  Specifically, Miller directed the printer to insert the term "Chief Goof Officer" into the brochure (along with other changes) and then submitted a copy of the resulting infringement to the United States Patent and Trademark Office with the Chief Goof Officer name he inserted circled in red as proof of his ownership and use.  (*Id.*)

26. As unbelievable as this seems, Miller left a trail of e-mails documenting his fraud. These e-mails were retrieved from the undeleted files on the laptop used by Miller during his employment at CircEsteem (Ett. Decl. at ¶ 13-20 and Exs. 5-11) and are attached hereto and incorporated herein as follows:

   a) At 1:34 p.m. on June 5, 2009, Miller received a copy of an e-mail to Maribeth Joy, CircEsteem Program Director, from Andy Holck of HD Design & Printing, who has, for many years, printed CircEsteem brochures and posters. The e-mail attached a copy of the current CircEsteem brochure and sought confirmation that it was "up-to-date". (Ett. Decl. at ¶ 14 and Ex. 5.)

   b) Two hours later, at 3:49 p.m., Miller wrote to Holck stating, "Great idea Andy. I will have the changes to you for Monday. Here is my new address … I will order 500 brochures on Monday once you get the changes. [A]fter they are printed I'd like you to send me the brochures in the mail." (Ett. Decl. at ¶ 15 and Ex. 6.)

   c) On Monday, June 8, 2009, (after Miller has unlawfully converted the CircEsteem corporate telephone numbers 312-593-HAHA and 513-432-9991 to his personal account), without CircEsteem's knowledge and or authorization, Miller sent an e-mail to Holck directing him to make "8 changes" in the brochure. In particular, Miller instructed Holck to add the phrase, "founded by Chief Goof-Officer Paul Miller in 2001" to the Mission panel. Among other things, Miller also instructed Holck to change the phone number to "312-593 HAHA" - the number unlawfully converted by Miller to his personal account - and to add "expanding into Cincinnati & Northern KY 513-432-9991" – the other CircEsteem telephone number unlawfully converted by Miller to his personal account. (Ett. Decl. at ¶ 16 and Ex. 7.)

      d)      That same afternoon, Holck sent Miller a revised proof and sought Miller's comments. Miller asked Holck to "leave Chief Goof Officer on one line" and call him for his credit card information. (Ett. Decl. at ¶ 17 and Ex. 8.)

      e)      On Monday, June 15, 2009, Holck sent Miller an e-mail confirming that the infringing brochures had been shipped the previous Friday. (Ett. Decl. at ¶ 18 and Ex. 9.)

      f)      On Tuesday, June 16, 2009, Miller confirmed that he "got the brochures [and] they look great." (Ett. Decl. at ¶ 19 and Ex. 10.)

      g)      The Temporary Restraining Order in this case was entered on June 23, 2009 and prohibits Miller from, among other things, "infringing or misappropriating or using without authorization CircEsteem's service marks or trademarks and the goodwill associated with them, or otherwise unfairly competing with CircEsteem in any manner whatsoever" and "engaging in unfair or deceptive acts or practices". (Exhibit A, ¶(h) and (i).)

      h)      The following day, Miller filed with the United States Patent and Trademark Office an Application for Trademark/Service Mark for CHIEF GOOF-OFFICER for "children's education and entertainment, namely, live clown shows" and attached the fraudulent and infringing brochure he created as a specimen of use. (Ett. Decl. at ¶ 20 and Ex. 11.)

      27.      On June 30, 2009, Miller filed a second Application with the United States Patent and Trademark Office seeking to register the mark CIRCUSTOTS for "education services, namely, providing classes in the field of developmental circus training for children ages 1-6)." (Ett. Decl. at ¶ 21 and Ex. 12.) He listed himself as owner of the mark. (*Id.*) Significantly, Miller took this action on the very same day that CircEsteem's counsel was pursuing compliance with the TRO for the Circustots Domain Names and had informed Miller's counsel that Circustots was created during and as a part of Miller's employment with CircEsteem and belonged to the corporation. (Ett. Decl. at ¶ 10.) CircEsteem subsequently produced a copy of

an e-mail sent by Miller to CircEsteem supporters announcing Circustots as a CircEsteem program – an action which Miller knew he had taken when he filed the fraudulent and infringing trademark application for Circustots. (Ett. Decl. at ¶ 11 and Ex. 3.)

## IV.     Request For Order To Show Cause

28.     Rarely is the Court presented with such heavily documented evidence of willful and deliberate defiance of a Court Order. In this case, however, even more evidence will be forthcoming. The laptop forensic analysis will be completed and, based upon preliminary findings, is most likely to provide additional evidence of destruction of CircEsteem files and assets in violation of the TRO via declaration and/or direct testimony. The subpoena to GoDaddy.com, if authorized by the Court, will document an additional attempt to destroy evidence of Defendants' cyberpiracy. A further review of the files that still remain on the laptop used by Miller during his employment promises additional evidence of CircEsteem's use and ownership of Chief Goof Officer and Circustots and further evidence of infringement, unfair competition and cyberpiracy, among other things. At this point, little additional evidence is required to document Miller's violation of the TRO by filing the false and fraudulent Trademark Applications for Chief Goof Officer and Circustots. The Applications and e-mails speak for themselves.

28.     When Defendants continue their unlawful conduct despite the entry of a Court Order, contempt and severe sanctions are the only remedy and hope of stopping the illegal conduct and deterring further violations.

WHEREFORE, plaintiff CircEsteem, Inc. respectfully requests that this Court grant its motion, issue an order to show cause why defendants should not be held in contempt, permit expedited discovery on these issues and schedule a prompt hearing to assess appropriate sanctions for this misconduct. In addition, CircEsteem respectfully requests that this Court

reprimand and warn Defendants that further violations of its Orders will not be tolerated and will be dealt with through the most severe sanctions, including but not limited to assessment of costs and fines, invocation of spoliation inferences, entry of default judgment and such other relief as this Court deems just and proper.

                                        Respectfully submitted,

                                        CIRCESTEEM, INC.

                                        By  /s/ Karen Ksander Ettelson
                                                Attorney for the Plaintiff

Karen Ksander Ettelson
Law Offices of Karen Ettelson
589 Sheridan Road
Glencoe, IL 60022
847-835-9759
Attorney No. 3127320

DATED: July 7, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2009, I electronically filed **Corrected CircEsteem's Motion for Order to Show Cause Why Defendants Should Not Be Held In Contempt Of This Court's Temporary Restraining Order** with the Clerk of the Court using the CN/ECF system, which will send notification of such filing to the following counsel of record at their e-mail addresses on file with the Court:

Brent P. Ray
Krista S. Schwartz

　　　　　　　　　　　　　　　　　　　　　　　　　____/s/ Karen Ksander Ettelson____
　　　　　　　　　　　　　　　　　　　　　　　　　Karen Ksander Ettelson
　　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff CircEsteem, Inc.