IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CIRCESTEEM, INC.,**<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**PAUL MILLER and PROCLOWN PRODUCTIONS, INC.,**<br><br>　　　　Defendants. | **Case No. 1:09-cv-3763**<br><br>**Honorable Judge Kocoras** |

**DEFENDANTS' RESPONSE TO CIRCESTEEM'S CORRECTED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THIS COURT'S TEMPORARY RESTRAINING ORDER**

　　　　In response to CircEsteem, Inc.'s ("CircEsteem") Motion For Order To Show Cause Why Defendants Should Not Be Held In Contempt Of This Court's Temporary Restraining Order ("Motion"), Defendants Paul Miller ("Miller") and ProClown Productions, Inc. (collectively, "Defendants") state: (1) Defendants did not instruct GoDaddy.com to cancel any domain name registrations subject to the Temporary Restraining Order ("TRO"); (2) the ChiefGoofOfficer.com (and variants) and Circustots.com (and variants) domain names and trademark applications are not "CircEsteem assets" under the TRO — therefore they need not be transferred to CircEsteem, and Defendants are free to trademark such marks, and (3) Defendants did not violate the TRO but submitting a CircEsteem brochure as part of trademark application. Defendants further state that Miller removed certain files on CircEsteem's laptop computer, and that copies of the removed CircEsteem's files exist on other CircEsteem computers and/or are in Miller's possession.

## I.    Defendants Promptly Complied With The TRO

Miller was terminated from his employment at CircEsteem the morning of June 22, 2009. The next day on June 23, 2009, without bothering to attempt sensible resolution of any post-termination differences, CircEsteem filed a Complaint and Motion for TRO.  The TRO (*see* Ray Decl., Ex. A) was entered the same day, and Miller promptly transferred various domain names, phone numbers, electronic equipment, documents, and files to effectuate swift compliance with the TRO — despite no wrongdoing on the Defendants' behalf in possessing certain CircEsteem assets at the time of Miller's termination.  In the days that followed, CircEsteem asked for additional domain names and phone numbers, and the parties started a seemingly productive dialogue over the identification of "CircEsteem assets" under the TRO for transfer to CircEsteem.

At this point, however, CircEsteem is overreaching the bounds of the scope of the TRO. CircEsteem is attempting to use the TRO as a sword to acquire domain names that are not "CircEsteem assets."

## II.    CircEsteem's Recantation Of "Miller's Scheme" Is Inaccurate

As CircEsteem's disingenuously explained to Judge Der-Yeghiayan during the TRO hearing on June 23, 2009, Miller apparently had devised a scheme to shut down the CircEsteem website and email system and divert CircEsteem phone calls following his termination. CircEsteem knows this information is false, yet it continues to state it today.  The CircEsteem website and email system was temporarily shut down by the registry company because CircEsteem had alerted the registry that its trademarks were at issue.  When Miller called to inquire as to what the status of the website, the registry company *automatically* shut down the CircEsteem websites and email accounts.  Miller had no part in this decision, and instead asked

the registry company to keep the websites and email accounts open.  The registry refused.  This fact has been explained to CircEsteem several times.

Regarding the phone numbers, Miller did nothing to divert phone calls from CircEsteem following his termination.  His use of the two phone numbers listed in the TRO was both personal and business related.  Miller believed the 312-593-4242 phone number to be his, as he had paid for it out his own pocket for many years prior to CircEsteem paying the bills, and used the number as his primary phone for contacting friends and family.  When the TRO was entered, Miller worked quickly to transfer this and other numbers to CircEsteem.

### III.   Miller Removed Certain Files From His CircEsteem Laptop

Following his termination, Miller removed files from the laptop that had previously been provided to him by CircEsteem.  The removed files include personal photographs, a personal iTunes account, and personal financial and family data.  The removed files also include folders labeled "CircEsteem Key Documents," "Contracts," "Trademark," and "Registered Domain Names."  The "Contacts," "Trademark," and "Registered Domain Names" folders contained Miller's personal information, as well as CircEsteem information.  The "CircEsteem Key Documents" folder contained only CircEsteem information.  Miller also removed a file called "Kintera Contacts Download 6_09_09," but the download and removal of this file did not change or alter any of the information in the existing Kintera database.  This document was merely a snapshot of the database at the time.

Miller further removed a "Circustots" folder which contained information related to Miller's Circustots program (discussed in detail below in Section V.II).  Miller also removed a folder called "Backup" which had archived personal and CircEsteem email information, and a "Desktop" file which had personal and CircEsteem information.

Miller has a copy of everything that he removed from the laptop. Many of the removed files also exist on other CircEsteem computers. No files were permanently deleted. Miller will assist CircEsteem in recovering all of the removed files.

### IV.     Miller Did Not Instruct GoDaddy.com To Cancel Any Domain Names

As discussed above, and as discussed in more detail in Defendants' Response To CircEsteem's Motion For Authorization To Issue Subpoena To GoDaddy.com, Miller did not instruct GoDaddy.com to cancel any domain names subject to transfer to CircEsteem under the TRO. Immediately following the entry of the TRO, Miller worked swiftly to effectuate the transfer of various domain names to CircEsteem. During this process, the undersigned was in frequent communication with CircEsteem's counsel to ensure that the transfers were occurring in a satisfactory and ordering fashion. CircEsteem's allegations of wrongdoing in this matter are unfounded, and they have submitted no proof that Miller cancelled any domain names.

### V.     The ChiefGoofOfficer And Circustots Domain Names Belong To Miller

The TRO mandates the transfer "of any and all of CircEsteem's assets" in the Defendants' possession. (*See* Ray Decl, Ex. A). Because the ChiefGoofOfficer and Circustots domain names are not CircEsteem assets, however, they need not be transferred. Moreover, CircEsteem's likelihood of success on the merits is very low.

### I.     ChiefGoofOfficer Domain Names

Regarding the ChiefGoofOfficer domain names[1], the title "Chief Goof Officer" was and is used to refer to Paul Miller *personally*. Miller used and uses that title to refer to himself in affiliation with ProClown Productions, Inc., a named defendant to this action and a wholly separate entity from CircEsteem. (*See* Ray Decl, Ex. B at page 8 ("Artist: ProClown Productions Inc./Paul Miller Chief Goof-Officer")). This was done even while Miller was

---

[1] Specifically, ChiefGoofOfficer.com, ChiefGoof-Officer.com and ChiefGoofOfficer.org.

employed by CircEsteem.  The "ChiefGoofOfficer" title is not used to describe or mark CircEsteem's goods or services, nor has it ever been used to describe anyone other than Paul Miller himself.  CircEsteem therefore has no ownership interest in the ChiefGoofOfficer domain names.

Further support can be found in CircEsteem's failure to link its arguments to any count in its Complaint.  The source of relief under a TRO must stem from a likelihood of success on the merits.  Miller plans to use the ChiefGoofOfficer domain names *for his own use*, entirely separate and distinct from CircEsteem.  Accordingly, CircEsteem's likelihood of success regarding these domain names is extremely low.  Use of the ChiefGoofOfficer domain names is not trademark infringement or unfair competition because doing so would not involve the use of the CircEsteem mark in commerce.  Registering the ChiefGoofOfficer domain names is not cyberpiracy because the domain name is not similar to CircEsteem's mark, nor is there any intent by Miller to profit from CircEsteem's marks (in "bad faith" or otherwise).  Miller did not convert the ChiefGoofOfficer domain names — they were never CircEsteem's to begin with.  Miller did not breach any duty to CircEsteem by registering the domain names, especially considering the title referred to him personally.  The trade secret and contract counts are inapplicable to the ChiefGoofOfficer domain names.

The ChiefGoofOfficer domain names are not "CircEsteem assets," and CircEsteem's likelihood of success on the merits is extremely low.  Defendants are not in contempt for declining to transfer these domain names, and should not be compelled to transfer them to CircEsteem.

## II.     Circustots Domain Names

Regarding the Circustots domain names[2], CircEsteem confirmed to Miller in writing that the entire Circustots program was Miller's creation to be owned exclusively by Miller. During the months of January and February 2009, Miller engaged in conversations with CircEsteem Executive Director Richard Friedman about the possibility of Miller running a Circustots program. In a February 10, 2009 email reflecting previous conversations, Friedman confirmed his understanding that "CT is a program developed and owned by Paul Miller."[3] (See Ray Decl., Ex. C). The email further set forth plans for Miller to train CircEsteem staff to work with Circustots, and a sharing of income between Miller and CircEsteem on resulting performances — 70% for Miller and 30% for CircEsteem. (*Id*.). Friedman also pointed out that CircEsteem would "not be liable for any losses or costs CT may incur." (*Id*.). CircEsteem, therefore, has previously admitted to Defendants that the Circustots program is <u>not</u> owned by CircEsteem. Instead, it is "developed and owned by Paul Miller." (*Id*.). As a result, the Circustots domain names are not "CircEsteem assets" under the TRO.

Miller's email of February 9, 2009 to an unnamed person does not change this conclusion. While Miller and CircEsteem had plans to offer a Circustots program, CircEsteem had already made clear to Miller that ownership of the Circustots program resided with Miller personally, not with CircEsteem. The promotion of Circustots in conjunction with CircEsteem does not somehow negate this explicit agreement.

Instead, Miller's actions regarding Circustots only serve to enforce the argument that the program belonged to him. In January, 2009, Miller organized and ran Circustots promo classes at BooCoo community center in Evanston, Illinois. The money used to organize these classes

---

[2] Specifically, Circustots.com, Circustots.org, Circustot.com and Circustot.org.

[3] "CT" is short for Circustots.

came from Defendants' own account, not CircEsteem.  This is consistent with Friedman's email: "All staff and program costs will be paid by Pro Clown." (*See* Ray Decl., Ex. C).  Miller also personally invested over $750 in special equipment to run the Circustots programs.  (*See* Ray Decl., Ex. E).  CircEsteem did not contribute to this purchase, nor was it assumed that they would.  Miller and CircEsteem had an agreement that the Circustots program belonged to Miller.  Miller also ran a Circustots program in February, 2009 at Concordia Avondale under ProClown Productions, Inc.  (*See* Ray Decl., Ex. D ("Thank you for this opportunity to bring out CircusTots to you!")).

      As with the ChiefGoofOfficer domain names, CircEsteem's likelihood of success on the merits toward the Circustots domain names is extremely low.  Following his termination from CircEsteem, Miller plans to use the Circustots domain names to promote his Circustots business entirely independent of CircEsteem.  He will not use the CircEsteem mark in conjunction with the Circustots programs.  Thus, use of the Circustots domain names is not trademark infringement or unfair competition because doing so would not involve the use of the CircEsteem mark in commerce.[4]  Registering the Circustots domain names is not cyberpiracy because the domain names are not similar to CircEsteem's mark, nor is there any intent by Miller to profit from CircEsteem's marks (in "bad faith" or otherwise).  Miller did not convert the Circustots domain names — they were never CircEsteem's to begin with.  Miller did not breach any duty to CircEsteem by registering the domain names, especially considering CircEsteem recognized that the Circustots program was owned by Miller.  The trade secret and contract counts are inapplicable to the Circustots domain names.

---

[4] Not to mention that the Circustots program has always been directed to kids aged 2-6, while CircEsteem is geared toward kids 7-18.

The Circustots domain names are not "Circusteem assets," and CircEsteem's likelihood of success on the merits is again extremely low. Defendants are not in contempt for declining to transfer these domain names, and should not be compelled to transfer them to CircEsteem.

### VI. Miller's Filing Of The CHIEF GOOF OFFICER and CIRCUSTOTS Trademark Applications Was Not Contemptuous

As an initial matter, if the Court agrees that the ChiefGoofOfficer and Circustots domain names belong to Defendants, and not CircEsteem, then Miller's actions in filing trademark application on these names are entirely justified. Miller owns the domain names, and intends to use them for his own business — completely separate from CircEsteem. Miller should be allowed to attempt to trademark that which belongs to him.

Putting this aside, CircEsteem's argument that Miller's trademark applications included falsified or infringing information is preposterous. As stated above, the title "ChiefGoofOfficer" has been used for years (both with and apart from CircEsteem) to refer to Paul Miller personally. CircEsteem did not create the position "ChiefGoofOfficer," and thereafter hire Paul Miller to fill it. When Paul Miller founded CirKids in 2001, the predecessor to CircEsteem, he became its "ChiefGoofOfficer." Paul Miller has also used the "ChiefGoofOfficer" title when referring to his role in ProClown Productions, Inc. (*See* Ray Decl., Ex. B).

Miller use of the brochure in applying for a trademark on CHIEF GOOF OFFICER does not violate any portion of the TRO. Miller submitted the CircEsteem brochure for a simple purpose: to show the U.S. Patent and Trademark Office that this title referred to him *personally*. His submission of the brochure did not infringe CircEsteem's trademark, or amount to unfair competition, because the mere filing of trademark application is not use of the mark in commerce. Miller's submission of the brochure not an unfair or deceptive act or practice for this same reason, in addition to the fact that Miller was not using the CircEsteem mark in a deceptive

manner. The brochure was attached to show use of the "ChiefGoofOfficer" title to identify Miller himself, and therefore does not run afoul of the TRO.

Date: July 7, 2009

Respectfully submitted,

By: s/ *Brent P. Ray*
Brent P. Ray
Bar Registration No.:  6291911
E-mail:  bpray@jonesday.com
Krista S. Schwartz
Bar Registration No.:  06238053
E-mail: ksschwartz@jonesday.com
JONES DAY
77 West Wacker
Chicago, Illinois 60601-1692
Telephone:  (312) 782-3939
Facsimile:    (312) 782-8585

*Attorneys for Defendants Paul Miller and ProClown Productions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2009, I electronically filed **Defendants' Response to CircEsteem's Corrected Motion for Order to Show Cause why Defendants Should Not be Held in Contempt of This Court's Temporary Restraining Order** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record at her e-mail address on file with the Court:

    Karen Ksander Ettelson

 

s/ *Brent P. Ray*
One of the Attorneys for Defendants Paul Miller
and ProClown Productions, Inc.